UNITED STATES DISTRICT COURT

EASTERN   DISTRICT OF   CALIFORNIA



FILED
JUN 27 2008
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

-oOo-

UNITED STATES OF AMERICA

v.

Bounsone SURIJAVONG and
Hoang NGUYEN

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:08 MJ 00140 DLB

I, RYAN TACK, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

COUNT 1 CONSPIRACY TO DISTRIBUTE AND POSSESSION WITH INTENT TO DISTRIBUTE A SCHEDULE 1 CONTROLLED SUBSTANCE

Beginning at a date uncertain, but no later than on or about June 25, 2008, in the County of Kern, in the Eastern District of California, the defendants, Bounsone SURIJAVONG and Hoang NGUYEN, did conspire with each other and others known and unknown, to distribute and possess with intent to distribute 300,000 tablets containing MDMA (3,4-methylenedioxy amphetamine), a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846 with a maximum penalty of 20 years imprisonment, a fine of $1,000,000, and a special assessment of $100.

I further state that I am an Special Agent with Drug Enforcement Administration and that this complaint is based on the following facts:

See Affidavit of Special Agent Ryan Tack, attached hereto and incorporated herein.

X   Continued on the attached sheet and made a part hereof.

Signature of Complainant Ryan Tack, Special Agent, Drug Enforcement Administration

Sworn to before me, and subscribed in my presence
June 26, 2008        4:40 PM         at   Fresno, California
Date                                       City and State

Gary S. Austin
U.S. Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR COMPLAINT

### I. BACKGROUND

I, Ryan J. Tack, Special Agent, United States Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, state as follows:

I. AGENT BACKGROUND, TRAINING & EXPERIENCE

1. I have been a Special Agent with the DEA for approximately three years with prior experience as an officer in the United States Army. I am currently assigned to the San Francisco Field Division of the DEA for General Enforcement Group 1. In my capacity as a DEA Special Agent, I have spoken with individuals that sell and distribute narcotic substances in an undercover capacity (UC) and investigator both in person and over the phone. As such, I have conducted, supervised, or otherwise participated in numerous investigations involving the manufacture and distribution of controlled substances and the amassing of proceeds from their sale. I attended a comprehensive sixteen week training academy in all aspects of drug law enforcement including, but not limited to, drug interdiction, drug detection, money laundering techniques, and the investigation of individuals involved in the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances.

II. PURPOSE OF AFFIDAVIT: ARREST

1. I make this affidavit in support of a criminal complaint against Bounsone SURIJAVONG and Hoang NGUYEN alleging the criminal violations set forth under Section III (C) below.

III. FACTS ESTABLISHING PROBABLE CAUSE

1. The facts set forth in this affidavit are known to me as a result of my personal participation in this investigation and through conversations with other Special Agents

from the DEA. The following is not an exhaustive enumeration of the facts that I have learned during the course of this investigation but are the facts I believe are sufficient to establish probable cause to arrest Bounsone SURIJAVONG and Hoang NGUYEN.

A. USE OF COOPERATING SOURCE

1. This investigation involves the use of a cooperating source (hereafter referred to as CS). I know the identity of the CS. The CS is continuing to work with law enforcement; therefore, I am seeking to keep the identities of the CS confidential at this time. Based upon my training and experience, I know that the disclosure of the CS' identity could jeopardize the safety of him/her and his/her family and could impede the flow of information to law enforcement. The CS was arrested in February 2007 for possession of a controlled substance. The CS' motivation for cooperating with law enforcement is consideration for sentence reduction.

2. The CS has provided information and assistance to DEA since February 2007 resulting in numerous arrests of individuals on State and Federal drug charges and the seizure of large quantities of methamphetamine, cocaine, and the seizure of drug related proceeds.

3. Based upon the previously proven reliability of the CS and a review of the information provided by the CS, as described below, I believe the information provided by the CS to be reliable.

B. DELIVERY OF 300,000 TABLETS OF MDMA TO GRAPEVINE, CA ON JUNE 25, 2008.

1. On June 21, 2008, CS met with Bounsone SURIJAVONG, Hoang NGUYEN and Johnny CHANTHAVADY in Las Vegas, Nevada to discuss the delivery of 300,000 tablets of MDMA (street name "ecstasy", a Schedule I controlled substance) in exchange for 24 kilograms of Cocaine. During the course of this investigation SURIJAVONG has been identified as a Canadian MDMA manufacturer, NGUYEN has been identified as working for SURIJAVONG'S drug operation, and CHANTHAVADAY has been identified

as one of SURIJAVONG'S couriers. After speaking with the CS, SURIJAVONG agreed to send CHANTHAVADY to Grapevine, CA, from Anaheim, CA to deliver the MDMA, to the CS.

2.   On June 25, 2008, at approximately 11:30 a.m., the CS spoke to SURIJAVONG. SURIJAVONG informed the CS that his courier, CHANTHAVADY, had departed Anaheim, CA and was en-route to Grapevine, CA to deliver the 300,000 tablets of MDMA. SURIJAVONG indicated to the CS that CHANTHAVADY would be contacting him/her shortly. According to the CS, SURIJAVONG instructed the CS to discard his cellular telephone immediately following the transaction.

3.   Shortly thereafter, the CS received an incoming call from CHANTHAVADY. The CS recognized CHANTHAVADY voice from meeting him in Las Vegas, NV the week prior. The CS instructed CHANTHAVADY to meet him at the Denny's restaurant off of Interstate 5 in Grapevine, CA. CHANTHAVADY agreed and told the CS he was en-route to the location. The CS told CHANTHAVADY to leave the keys in his vehicle so when he/she arrived, he/she could take the vehicle to another location to exchange the MDMA tablets for the cocaine. The CS told CHANTHAVADY he/she would then return the vehicle to the Denny's lot with the cocaine in the trunk of the vehicle. CHANTHAVADY agreed.

4.   At approximately 1:15 p.m., the CS placed an outgoing call to CHANTHAVADY. CHANTHAVADY told the CS he was currently getting off at the Grapevine exit and he would be arriving at the Denny's shortly. The CS then inquired as to the type of vehicle he was driving. CHANTHAVADY told the CS he was driving a black Acura. The CS told CHANTHAVADY he/she was en-route to the Denny's and would also be arriving soon. The CS then instructed CHANTHAVADY to go inside the Denny's to wait. Shortly thereafter, agents identified a black Acura RDX, CA license plate 5DQS875, R/O: Hong Do, 1068 Desert Shale Ave, Las Vegas, NV, enter the Denny's parking lot and park on the east side of the lot. Agents observed an Asian male, later identified as CHANTHAVADY, exit the vehicle and proceed to enter the Denny's restaurant.

cont

5.      At approximately 1:40 p.m., under the escort of agents, the CS departed a neutral location en-route to the Denny's restaurant. Approximately ten minutes later, agents observed the CS enter the Denny's parking lot. The CS then placed a call to CHANTHAVADY. During the call, the CS told CHANTHAVADY he/she was going to take the Acura to another location and would return in approximately 15 minutes. CHANTHAVADY agreed. Agents then observed the CS enter the black Acura RDX and depart the Denny's parking lot. Under the escort of agents, the CS returned the vehicle to the neutral location. At the neutral locations, agents searched the vehicle. Agents discovered three large brown cardboard boxes inside the trunk of the vehicle. Upon further inspections, agents discovered inside the three cardboard boxes were 30 bags of approximately 10,000 tablets of MDMA (ecstasy). Agents then performed a presumptive field test on the MDMA. The tablets tested positive for the presence of MDMA (3,4-methylenedioxy-N-methylamphetamine).

6.      Agents then loaded 24 kilograms of "look alike" cocaine into a black duffle bag and placed it into the trunk of the vehicle. Agents also installed a "kill" switch, which when activated, would kill the vehicle's electrical system thus stalling the vehicle. The CS then placed an outgoing call to CHANTHAVADY. The CS told CHANTHAVADY that he/she was en-route back to the Denny's restaurant to return the vehicle. CHANTHAVADY acknowledged and inquired as to how long it would take. The CS told him only a matter of minutes.

7.      Shortly thereafter, under the escort of agents, the CS departed the neutral location in the black Acura RDX containing the 24 kilograms of "look alike" cocaine and traveled back to the Denny's restaurant. Shortly after arriving at the Grapevine exit, the CS placed an outgoing call to CHANTHAVADY. CHANTHAVADY instructed the CS to drop the vehicle off at the Jack in the Box restaurant a few blocks down from the Denny's restaurant. The CS agreed. Agents then observed the CS park the vehicle in the Jack in the Box parking lot, exit the vehicle, and depart the lot on foot. Agents also observed CHANTHAVADY depart the Denny's parking lot on foot and walk to the black Acura

RDX the CS parked in the Jack in the Box parking lot. Agents the observed CHANTHAVADY enter the black Acura RDX and exit the parking lot.

8. Shortly thereafter, as CHANTHAVADY entered onto Interstate 5 southbound, agents engaged the "kill switch" on the vehicle. The vehicle stall on the side of the road and CHANTHAVADY immediately exited the vehicle. Agents then observed CHANTHAVADY walk the Shell Gas Station nearby. Agents then lost sight of CHANTHAVADY. A short time later, agents intercepted a tow truck arriving at the location of the stalled Acura RDX. According to the tow truck driver, an individual who identified himself as "Tommy Tran", requested the vehicle be towed to the nearest tow yard. "Tran" told the tow truck driver he would be waiting at the Ramada Motel. Agents then set up surveillance at the Ramada Motel and identified CHANTHAVADY sitting in the main lobby. Agents then instructed the Kern County Sherriff Department to approach the black Acura RDX to inspect the vehicle.

9. Agents then observed CHANTHAVADY depart the Ramada Motel and walk toward the Shell Gas Station. Agents then observed CHANTHAVADY look in the direction of the stalled Acura and observe the Kern County Sheriff's Department inspecting the vehicle. A few minutes later agents observed CHANTHAVADY approach a motorist at the Shell gas station and enter his vehicle. The motorist and CHANTHAVADY then departed the Shell gas station parking lot and enter onto Interstate 5 traveling southbound.

10. Agents then instructed the California Highway Patrol and Kern County Sheriffs Department to affect a traffic stop on the motorist and CHANTHAVADY as they traveled southbound on Interstate 5. During the traffic stop CHANTHAVADY identified himself to the officer as "Tommy Tran." When the officer asked CHANTHAVADY to provide identification, CHANTHAVADY told the officer he did not possess any form of identification. Later, at a local substation, CHANTHAVADY admitted his real name was Johnny CHANTHAVADY and not Tommy Tran as he had previously indicated.

11.  Agents contacted Immigration and Customs Enforcement (ICE) to inquire if CHANTHAVADY's had made any international travel arrangements to depart the United States. Agents learned that CHANTHAVADY was scheduled to depart McCarron International Airport in Las Vegas, NV on July 26, 2008 at 2:00 p.m. to Vancouver, Canada. Agents also learned that SURIJAVONG and NGUYEN were scheduled to travel with CHANTHAVADY on the departing flight to Vancouver.

12.  On June 26, 2008, agents set up surveillance at the McCarron International airport to further identify if SURIJAVONG and NGUYEN were the individuals the CS met with the week prior in Las Vegas, NV to arrange the delivery of the 300,000 tablets of MDMA. At approximately 12:30 p.m., agents identified two individuals matching the description of the persons the CS met with the week prior to arrange the delivery. The CS was present at the airport terminal and positively identified SURIJAVONG and NGUYEN as the persons he/she met with to arrange the delivery. SURIJAVONG and NGUYEN were taken into custody for further questioning.

13.  During the post arrest interview, NGUYEN informed agents he worked for SURIJAVONG transporting illegal drug proceeds. NGUYEN informed agents he would be instructed by SURIJAVONG to pick-up illegal drug proceeds at designated locations and deliver them to SURIJAVONG'S mother's home. NGUYEN told agents he had observed the 300,000 tablets of MDMA in Los Angeles prior to the delivery to the CS. NGUYEN further informed agents he overheard SURIJAVONG instruct CHANTHAVADY to deliver the MDMA to the CS.

C. PROBABLE CAUSE THAT CRIMES HAVE BEEN COMMITTED

Based on the foregoing, I believe that there is probable cause that Bounsone SURIJAVONG and Hoang NGUYEN have violated Title 21, United States Code, sections 841(a)(1), 841(b)(1)(C)846.

Ryan J. Tack
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 26th day of June 2008.

_____
Gary S. Austin
United States Magistrate Judge